1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10 BALBIR SINGH,

11           Plaintiff,             No. CIV 2:11-cv-0401–GEB-JFM (PS)

12     vs.

13 WELLS FARGO BANK N.A., d.b.a.
WELLS FARGO HOME MORTGAGE,
14 *et al.*,                 ORDER AND

15         Defendants.       FINDINGS & RECOMMENDATIONS

16 _____/

17        This matter is before the court on defendant Wells Fargo Bank N.A. dba Wells

18 Fargo Home Mortgage's ("Wells Fargo's") February 23, 2011 filed a motion to dismiss pursuant

19 to Fed. R. Civ. P. 12(b)(6) and February 23, 2011 motion for more definite statement.  On

20 February 25, 2011, defendant Provident Savings Bank ("Provident") filed a joinder to both

21 motions.  Upon review of the motions and the documents in support and opposition, and good

22 cause appearing therefor, THE COURT FINDS AS FOLLOWS:

23 /////

24 /////

25 /////

26 /////

1            FACTUAL AND PROCEDURAL BACKGROUND

2            This matter arises from foreclosure proceedings initiated against real property

3    owned by plaintiff and his wife, Swaran Kaur ("Kaur")[1], as joint tenants, and located at  17765

4    Daffodil Hill Street, Lathrop, CA 95330 ("the Property)."  Before the court is the second judicial

5    action concerning the Property.  The first action, filed solely by Kaur in the San Joaquin County

6    Superior Court, was dismissed following the state court's order sustaining Wells Fargo's

7    demurrer.  Both actions are discussed more fully infra.

8    1.    The State Court Action[2]

9            On March 29, 2010, Kaur, proceeding with counsel, filed a complaint in the San

10   Joaquin County Superior Court ("the state court action") against Wells Fargo, Cal-Western

11   Reconveyance ("Cal-Western")[3], and Shane L. Hart and Michelle G. Hart Revocable Family

12   Trust ("the Hart Family Trust")[4].  See Motion to Dismiss ("MTD"), Ex. 5.  Kaur's complaint was

13   premised on claims of wrongful foreclosure proceedings initiated against the Property, which

14   was secured by a home mortgage loan in the amount of $159,600.00 ("the mortgage) obtained on

15   March 13, 2009.  Id. at 2, 4.  The Promissory Note identifies Kaur as the sole Borrower and

16   Provident as the lender.  Id. at 4.  Kaur and plaintiff, joint tenants, were listed as "Borrowers" on

17   the Deed of Trust.  Id.

18   /////

19

20        [1]  Kaur is not a party to this action.

21        [2]  Wells Fargo seeks judicial notice of publicly recorded documents and state court filings
     attached to its motion to dismiss.  A court may take judicial notice of facts "not subject to
22   reasonable dispute" because they are either "(1) generally known within the territorial
     jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to
23   sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  Upon review, the
     court finds that the exhibits are appropriate for judicial notice.

24        [3]  Both Wells Fargo and Cal-Western are defendants in this action.  There is no evidence
     that Cal-Western has been served with the FAC and no notice of default has been filed.
25

26        [4]  The Hart Family Trust was dismissed with prejudice by Kaur on June 28, 2010.  See
     MTD, Ex. 3.

1    On November 17, 2009, a Notice of Default ("NOD") was recorded in San

2  Joaquin County.  MTD, Ex. 5 at 5.  Kaur contacted Wells Fargo via telephone upon receipt of the

3  NOD and was informed that she could cure the default by submitting a payment in the amount of

4  $5,628.01.  Id.  Kaur mailed a check in that amount to Wells Fargo, who promptly returned it for

5  Kaur's failure to include attorneys' fees.  Id.  Kaur, who contends that she was not advised of

6  attorneys' fees during the initial telephone call with Wells Fargo, contacted Wells Fargo again,

7  who stated that $7,493.79 would be sufficient to cover all payment charges, attorneys' fees and

8  miscellaneous fees.  Id.  On December 28, 2009, Kaur submitted a cashier's check for that

9  amount, which Wells Fargo accepted.  Id.

10    On February 4, 2010, Kaur received a notice regarding a short sale of the

11  Property.  MTD, Ex. 5 at 6.  Kaur immediately contacted Wells Fargo, who stated that the short

12  sale notice was sent in error and that Wells Fargo's internal departments were experiencing

13  communication problems.  Id.  On February 18, 2010, Cal-Western, who was substituted as

14  trustee on January 26, 2010, recorded a Notice of Trustee's Sale.  Id. at 7.  On March 18, 2010,

15  the Property was sold to the Hart Family Trust.  Id.

16    Kaur's March 29, 2010 complaint set forth twelve causes of action: (1) breach of

17  contract; (2) promissory estoppel; (3) equitable estoppel; (4) waiver; (5) breach of covenant of

18  good faith and fair dealing; (6) violation of Cal. Civ. Code §§ 2923.5 and 2923.6; (7) violation of

19  Cal. Bus. & Prof. Code § 17200; (8) unjust enrichment; (9) accounting; (10) set aside the

20  trustee's sale; (11) cancellation of trustee's deed; and (12) quiet title.  See MTD, Ex. 4.

21    On April 18, 2010, Kaur filed a first amended complaint alleging fourteen causes

22  of action; in addition to those set forth in the complaint, Kaur added violation of Cal. Civil Code

23  § 2934 and injunctive relief / temporary restraining order.  MTD, Ex. 5.  Wells Fargo filed a

24  demurrer to the first amended complaint, which was sustained on July 26, 2010 with leave to

25  amend.  Id., Ex. 6.

26  /////

On August 4, 2010, Kaur filed a second amended complaint setting forth ten causes of action: (1) breach of contract; (2) promissory estoppel; (3) equitable estoppel; (4) waiver; (5) breach of covenant of good faith and fair dealing; (6) violation of Cal. Civ. Code §§ 2923.5 and 2923.6; (7) violation of Cal. Civil Code § 2934; (8) violation of Cal. Bus. & Prof. Code § 17200; (9) unjust enrichment; and (10) accounting.  MTD, Ex. 7.

On January 4, 2011, Wells Fargo's second demurrer was sustained without leave to amend.  Id., Ex. 8.  Judgment was entered in favor of Wells Fargo on January 14, 2011[5], and the state action filed by Kaur was dismissed.  Id., Exs. 9-10.

2.    The Instant Action

On January 21, 2011, plaintiff, proceeding pro se, filed a complaint in the San Joaquin County Superior Court.  On January 26, 2011, plaintiff filed the operative first amended complaint ("FAC"), which was removed to this court by Wells Fargo on February 11, 2011.  The FAC – a 221-page, 843-paragraph document – is premised upon the following causes of action: (1) declaratory relief; (2) fraud and deceit; (3) fraud misrepresentation; (4) breach of contract; (5) breach of oral contract; (6) promissory estoppel; (7) equitable estoppel; (8) set aside foreclosure; (9) the security first rule; (10) conspiracy; (11) accounting; (12) breach of covenant of good faith and fair dealing; (13) breach of fiduciary duty; (14) intentional infliction of emotional distress; (15) negligent infliction of emotional distress; (16) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617; (17) violation of California Business and Professions Code § 17500; (18) violation of California Business and Professions Code § 17200; and (19) violation of California Civil Code § 1788.17.[6]

/////

---

[5]  The date on this order from the San Joaquin County Superior Court is erroneously listed as January 14, *2010*.  See MTD, Ex. 9.

[6]  Although the FAC states twenty (20) causes of action, plaintiff's twentieth cause of action for "punitive damages" is, in fact, a type of remedy.

1    In the FAC, plaintiff contends that he obtained a loan in the amount of

2 $159,600.00 ("the mortgage") from Provident on March 13, 2009, which was secured by a deed

3 of trust on the Property.[7]  See FAC at 6, 9.  Plaintiff supplements his FAC with certain exhibits,

4 including a grant deed, which he references in the FAC as evidence that he entered into this

5 mortgage.[8]  See Doc. No. 23.  The grant deed does, indeed, list plaintiff and Kaur as borrowers to

6 hold the Property as joint tenants.  Id.  The Promissory Note submitted by Wells Fargo, however,

7 evidences that the mortgage was obtained solely by Kaur; plaintiff is not listed as a borrower on

8 that document.  See MTD, Ex. 2.  Plaintiff's allegations in the FAC are practically identical to

9 those alleged by Kaur in the state court action.

10                                       STANDARDS

11    The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

12 sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

13 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

14 sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901

15 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

16 relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct.

17 1955, 1974 (2007).  Thus, a defendant's Rule 12(b)(6) motion challenges the court's ability to

18 grant any relief on the plaintiff's claims, even if the plaintiff's allegations are true.

19    In determining whether a complaint states a claim on which relief may be granted,

20 the court accepts as true the allegations in the complaint and construes the allegations in the light

21 /////

22

23    [7] In the FAC, plaintiff misspells the street name, listing it as "Daffodill" instead of

24 "Daffodil."

25    [8] The court may consider a limited set of documents without converting a Rule 12(b)(6)
motion into a motion for summary judgment: documents attached to the complaint, documents

26 incorporated by referenced in the complaint, or matters that can be judicially noticed.  MGIC
Indemnity Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

1  most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v.

2  United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

3         The court is permitted to consider material properly submitted as part of the

4  complaint, documents not physically attached to the complaint if their authenticity is not

5  contested and the complaint necessarily relies on them, and matters of public record.  Lee v. City

6  of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  Matters of public record include

7  pleadings and other papers filed with a court.  Mack v. South Bay Beer Distributors, 798 F.2d

8  1279, 1282 (9th Cir. 1986).  The court need not accept as true conclusory allegations,

9  unreasonable inferences, or unwarranted deductions of fact.  Western Mining Council v. Watt,

10  643 F.2d 618, 624 (9th Cir. 1981).

11                                    DISCUSSION

12  1.    Federal Jurisdiction

13         In light of the initial state court action filed by Kaur, defendants seek dismissal of

14  the FAC on res judicata grounds.  Alternatively, they seek dismissal of all causes of action for

15  failure to state a claim.  Review of the FAC reveals that plaintiff's only federal cause of action

16  arises under RESPA.  For the reasons set forth below, the undersigned finds that the court lacks

17  jurisdiction over plaintiff's FAC.

18         Examination of the FAC reveals that, procedurally, plaintiff's RESPA claim fails.

19  Although plaintiff's sixteenth cause of action is brought pursuant to 12 U.S.C. § 2607(b),

20  plaintiff vaguely states that "Defendants, and each of them, as will be set forth herein violated

21  both the terms and spirit of sections 12 U.S.C. § 2601, et seq., as more particularly alleged in this

22  complaint."  FAC at 209, ¶ 798.  This statement fails the pleading requirements of the Federal

23  Rules of Civil Procedure.  See Fed. R. Civ. P. 8(a)(1) ("a short and plain statement of the claim

24  showing that the pleader is entitled to relief").

25         Substantively, plaintiff's claim also fails.  Congress enacted RESPA to control

26  real estate settlement costs by "insur[ing] that consumers throughout the Nation are provided

1   with greater and more timely information on the nature and costs of the settlement process and

2   are protected from unnecessarily high settlement charges caused by certain abusive practices that

3   have developed in some areas of the country." 12 U.S.C. § 2601(a).  To effectuate these

4   objectives, RESPA requires advance disclosure of settlement costs, the elimination of kickbacks

5   or referral fees, and a reduction of the amount that buyers are required to place in escrow

6   accounts for taxes and insurance.  Id. § 2601(b).

7          Section 2605 of RESPA relates to the disclosures and communications required

8   regarding the servicing of mortgage loans, and provides that loan servicers have a duty to

9   respond to Qualified Written Requests ("QWRs") from borrowers asking for information relating

10  to the servicing of their loan.  12 U.S.C. § 2605(e).  Under RESPA, lenders of federally related

11  mortgage loans must disclose whether servicing of a loan may be assigned, sold or transferred to

12  loan applicants.  12 U.S.C. § 2605(a).  Additionally, borrowers may send QWRs under RESPA

13  to loan servicers for information relating to the servicing of their loan.  12 U.S.C. § 2605(e)(1).

14  Loan servicers have 60 days after the receipt of a QWR to respond to the borrower inquiry.  12

15  U.S.C. § 2605(e)(2).  Further, Section 8 of RESPA, 12 U.S.C. § 2607, the section pursuant to

16  which the FAC is brought, is the anti-kickback provision.  This section applies only to settlement

17  services and prohibits kickbacks which are "incident to or a part of a real estate settlement

18  service...."  Id. § 2607(a).  Section 8 also prohibits fee splitting "of any charge made or received

19  for the rendering of a real estate settlement service." 26 U.S.C. § 2607(b).

20         Regardless of the particular section identified by plaintiff, the RESPA claim must

21  fail because he is not a borrower on the loan.  See, e.g., Wilson v. JPMorgan Chase Bank, N.A.,

22  2010 WL 2574032 (E.D. Cal. 2010).  Insofar as plaintiff contends there were RESPA violations

23  at the time of the origination of the loan, plaintiff lacks standing as he did not sign the

24  Promissory Note.  See id.  To the extent plaintiff argues that he submitted a QWR to Wells

25  Fargo, Wells Fargo only had the duty to respond to QWRs sent "from the borrower" –  in this

26  case, Kaur.  Wells Fargo was under no obligation to respond to any requests sent by plaintiff.

1  See 12 U.S.C. § 2605(e)(1)(A).  Because plaintiff's RESPA claim fails as a matter of law, the

2  court lacks federal subject matter jurisdiction.

3  2.      Leave to Amend

4              Having carefully considered the allegations in the FAC, the parties' briefs and

5  relevant legal authority, the undersigned concludes that it does not appear plaintiff can cure the

6  deficiencies noted in a second amended complaint.  In his opposition, plaintiff appears to assert a

7  new claim under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f.  Although this is

8  procedurally improper, the court, faced with the question of whether plaintiff should be granted

9  leave to amend the FAC, should decline to extend the opportunity.  The FAC and the judicially

10 noticed exhibits unequivocally demonstrate that Kaur was the sole borrower of the mortgage, that

11 plaintiff did not receive any loan proceeds, and that he only signed the Deed of Trust to perfect

12 the security instrument.  Assuming that plaintiff's allegations are true, plaintiff has no standing to

13 request rescission or damages under TILA because he was not a party to the loan contract and

14 therefore is not an "obligor" or "consumer" with the right to rescind under TILA.  See Johnson v.

15 First Fed. Bank of Cal., 2008 WL 2705090, at *5 (N.D. Cal. Jul.8, 2008) (holding a party who

16 was not named in the loan papers was not a "consumer" under TILA and therefore had no

17 standing to bring a TILA claim).  Accordingly, leave to amend should not be granted.  See

18 McHenry v. Renne, 84 F.3d 1172, 1174, 1179-80 (9th Cir. 1996) (affirming dismissal of

19 amended complaint where it failed to satisfy Rule 8's pleading requirements).

20 3.      Supplemental Jurisdiction

21             Since only plaintiff's state law claims remain, the court may consider whether to

22 continue exercising supplemental jurisdiction.  See Acri v. Varian Assocs., Inc., 114 F.3d 999,

23 1000 (9th Cir. 1997) (en banc) (suggesting that a district court may, but need not, sua sponte

24 decide whether to continue exercising supplemental jurisdiction under 28 U.S.C. § 1367(c)(3)

25 after all federal law claims have been dismissed).  Under 28 U.S.C. § 1367(c)(3), a district court

26 "may decline to exercise supplemental jurisdiction over a [state law] claim" when "all claims

1    over which it has original jurisdiction" have been dismissed.  "While discretion to decline

2    supplemental jurisdiction over state law claims is triggered by the presence of one of the

3    conditions in § 1367(c)(3), it is informed by the . . . values of economy, convenience, fairness,

4    and comity."  Acri, 114 F.3d at 1001.  "[I]n the usual case in which all federal-law claims are

5    eliminated before trial, the balance of [the] factors to be considered . . . will point toward

6    declining to exercise jurisdiction over the remaining state-law claims."  Carnegie-Mellon Univ.

7    v. Cohill, 484 U.S. 343, 350 n.7 (1988).  "Further, primary responsibility for developing and

8    applying state law rests with the state courts."  Curiel v. Barclays Capital Real Estate Inc., 2010

9    WL 729499, at *1 (E.D. Cal. 2010).

10            Here, considerations of comity weigh heavily in favor of declining supplemental

11    jurisdiction since all remaining claims arise under state law.  "Needless decisions of state law

12    should be avoided ...."  Gibbs v. United Mine Workers of Am., 383 U.S. 715, 726 (1966).

13    Further, federal judicial economy is promoted by declining to exercise supplemental jurisdiction.

14    See Otto v. Heckler, 802 F.2d 337, 338 (9th Cir. Cir.1986) (stating that "[t]he district court, of

15    course, has the discretion to determine whether its investment of judicial energy justifies

16    retention of jurisdiction").  Here, "[t]here is no prevailing reason for this court to maintain

17    jurisdiction to preserve judicial economy."  Meza v. Matrix Serv., 2010 WL 366623, at *4 (E.D.

18    Cal. 2010).  Finally, considerations of convenience also weigh against exercising supplemental

19    jurisdiction since the Superior Court of California, County of San Joaquin is located in close

20    proximity to this federal court and was where this matter was initially filed.  See id. (finding that

21    convenience weighed against the exercise of supplemental jurisdiction where "the state and

22    federal fora are located in Sacramento, only blocks from one another, making both equally

23    convenient for the parties.").  Accordingly, the pertinent factors do not weigh in favor of the

24    continued exercise of jurisdiction, and the court declines to exercise supplemental jurisdiction

25    over plaintiff's remaining state law claims.  Therefore, those claims should be remanded under

26    28 U.S.C. § 1367(c)(3).

Accordingly, IT IS HEREBY ORDERED that:

1. The August 4, 2011 hearing on this matter is vacated;

2. The September 8, 2011 initial scheduling conference is vacated; and

IT IS HEREBY RECOMMENDED THAT:

1. Wells Fargo's February 23, 2011 motion to dismiss be partially granted;

2. Wells Fargo's February 23, 2011 motion for more definite statement be denied without prejudice to its renewal in state court; and

3. This matter be remanded to the San Joaquin County Superior Court for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 26, 2011.

UNITED STATES MAGISTRATE JUDGE

/014;sing0401.mtd.v2

10